OPINION
{¶ 1} Appellant, Steven Henderson ("Henderson"), appeals the entry of summary judgment against him in connection with his suit for wrongful imprisonment. On review, we reverse the judgment entry of the Trumbull County Common Pleas Court.
 {¶ 2} Henderson was tried twice for rape, and convicted twice, in the Trumbull County Common Pleas Court. Each time he was sentenced to life in prison.
 {¶ 3} Henderson appealed both his convictions to this court. In his first appeal, this court reversed the conviction on the grounds of prosecutorial misconduct, ineffective assistance of counsel, and possible jury tampering.[1] In his second appeal, this court reversed his conviction due to ineffective assistance of counsel.[2]
 {¶ 4} Henderson filed the instant case for wrongful imprisonment and for a declaration of innocence pursuant to R.C. 2743.48. The state of Ohio defended the suit and is the appellee herein.
 {¶ 5} Each party filed a motion for summary judgment.
 {¶ 6} The trial court granted the motion for summary judgment of the state of Ohio, but denied Henderson's motion for summary judgment.
 {¶ 7} Henderson has timely appealed to this court, asserting the following single assignment of error:
 {¶ 8} "The trial court erred to the prejudice of plaintiff-appellant in granting the defendant-appellee's motion for summary judgment."
 {¶ 9} Our standard of review following the entry of summary judgment is de novo.[3]
 {¶ 10} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[4] The court shall consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any."[5] Further, the party seeking summary judgment must point specifically to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.[6] In response, the nonmoving party must set forth specific facts that demonstrate that there is a genuine issue of material fact to be tried. The nonmoving party may not rest upon bare allegations or conclusory statements in his complaint.[7]
 {¶ 11} An additional consideration regarding summary judgment is that in considering whether to grant a motion for summary judgment, the trial court may not weigh the evidence and thereby enter summary judgment to the party with the stronger case: "such weighing of evidence is inappropriate in the summary judgment arena."[8]
 {¶ 12} The Supreme Court of Ohio has explained the two-step process for petitioning for damages for wrongful imprisonment, as follows:
 {¶ 13} "The Ohio Revised Code provides a two-step process whereby a person claiming wrongful imprisonment may sue the state of Ohio for damages incurred due to the alleged wrongful imprisonment.[9] The first action, in the common pleas court under R.C. 2305.02, seeks a preliminary factual determination of wrongful imprisonment; the second action, in the Court of Claims under R.C. 2743.48, provides for damages.
 {¶ 14} "Prior to filing suit in the Court of Claims for damages, a petitioner must establish the following: (1) the petitioner was convicted of a felony; (2) the petitioner was sentenced for that conviction; (3) the conviction was vacated, dismissed, or reversed; (4) no further prosecution was attempted or allowed for that conviction or any act associated with that conviction; and (5) the offense of which the petitioner was found guilty was not committed by the petitioner or was not committed at all.[10] However, a previous finding of notguilty is not sufficient to establish innocence. The petitioner seeking to establish a claim for wrongful imprisonment must produce more evidence than a judgment of acquittal, which is merely a judicial finding that the state did not prove its case beyond a reasonable doubt.[11] The petitioner carries the burden of proof in affirmatively establishing his or her innocence under R.C. 2743.48(A)(5)."[12]
 {¶ 15} Thus, at the first stage of the process, whereby a petitioner surpasses the hurdles that he was convicted of a felony, that he was sentenced for that felony, that his conviction was reversed, and that no further prosecution will occur, the petitioner must prove by a preponderance of the evidence that he is innocent of the crime for which he was convicted.[13]
 {¶ 16} In this case, Henderson filed his complaint pursuant to R.C.2743.48 and prayed for damages as a result of his wrongful imprisonment. However, because R.C. 2743.48(D) vests exclusive and original jurisdiction in the Court of Claims to award damages for wrongful imprisonment, the Trumbull County Court of Common Pleas was limited to determining whether Henderson was wrongfully imprisoned pursuant to R.C.2305.02, which reads as follows:
 {¶ 17} "A court of common pleas has exclusive, original jurisdiction to hear and determine an action or proceeding that is commenced by an individual who satisfies divisions (A)(1) to (4) of section 2743.48 of the Revised Code and that seeks a determination by the court that the offense of which he was found guilty, including all lesser-included offenses, either was not committed by him or was not committed by any person. If the court enters the requested determination, it shall comply with division (B) of that section."
 {¶ 18} Thus, R.C. 2305.02 references subsections (A)(1) to (4) of R.C.2743.48 for the purpose of determining whether the petitioner is a "wrongfully imprisoned individual." R.C. 2743.48(A)(1) to (4) read as follows:
 {¶ 19} "(A) As used in this section and section 2743.49 of the Revised Code, a `wrongfully imprisoned individual' means an individual who satisfies each of the following:
 {¶ 20} "(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information prior to, or on or after, September 24, 1986, and the violation charged was an aggravated felony or felony.
 {¶ 21} "(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.
 {¶ 22} "(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.
 {¶ 23} "(4) The individual's conviction was vacated or was dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney * * * against the individual for any act associated with that conviction."
 {¶ 24} In addition to satisfying subsections (A)(1) to (4) of R.C.2743.48 in order to proceed with his action filed pursuant to R.C.2305.02, Henderson must prove by a preponderance of the evidence that he is innocent of the crime of rape.[14]
 {¶ 25} Henderson satisfies the requirements of subsections (A)(1) to (4) of R.C. 2743.48. He was charged with the felony of rape and tried twice for same. He was found guilty of rape in both trials. He was sentenced to life in prison in a state institution. His two convictions for rape were reversed on appeal and the prosecuting attorney filed a nolle prosequi prior to the third trial, thus indicating that he does not seek to further prosecute Henderson for the crime of rape. The remaining issue, as stated above, is whether Henderson is able to prove his innocence pursuant to R.C. 2743.48(A)(5).
 {¶ 26} The trial court's judgment entry reviewed the proceedings during the first two trials at which Henderson was convicted, as well as the third trial where a nolle prosequi was entered. The trial court was particularly impressed by the deposition of the alleged victim taken during the pendency of the instant case. At that deposition, taken on December 5, 2005, the alleged victim still maintained that Henderson raped her and that the trooper who administered her lie detector test bullied her into recanting her former testimony. The trial court then found that Henderson did not satisfy his burden of proof to prove that he was innocent by a preponderance of the evidence. Instead, according to the trial court, Henderson merely "avoided criminal liability" by obtaining the reversals of his convictions in this court. The trial court stated in its judgment entry:
 {¶ 27} "No trier of fact ever found [Henderson] not guilty. To the contrary, he was found guilty beyond a reasonable doubt by two separate juries. Further, although the Court of Appeals reversed both convictions, it was not because they found [Henderson] innocent nor that the convictions were against the manifest weight of the evidence."
 {¶ 28} The trial court further concluded as follows:
 {¶ 29} "Based upon the evidence presented by both parties, [Henderson] does not meet his burden of proving by a preponderance of the evidence that he is innocent of this crime or that he fits the definition of a wrongfully imprisoned individual."
 {¶ 30} Finally, the trial court concluded, with respect to Henderson's motion for summary judgment, that there were genuine issues of material fact and that reasonable minds could come to different conclusions; but, with respect to the motion for summary judgment filed by the state of Ohio, there were no genuine issues of material facts and that reasonable minds could come to but one conclusion, which conclusion is adverse to Henderson.
 {¶ 31} We are unable to reconcile the trial court's conclusions. On the one hand, it said that Henderson's motion for summary judgment did raise genuine issues of material fact; and, on the other hand, it said that the state of Ohio's motion for summary judgment established that there were no genuine issues of material fact. If the material fact is Henderson's innocence, how is it possible to find that one party established that there are genuine issues of material fact, and, at the same time, establish that the opposite is true? Due to this conflict, we are compelled to reverse the judgment of the trial court.
 {¶ 32} Further, on the subject of proving one's innocence in a civil proceeding pursuant to R.C. 2305.02, we are constrained to add that the long-standing principle that one is innocent until proven guilty still obtains in a criminal proceeding.[15] However, as pointed out by the Supreme Court of Ohio, a judgment of acquittal in a criminal trial or, as in Henderson's case, a decision by the state of Ohio not to prosecute a third time, does not necessarily equate to a finding of innocence:
 {¶ 33} "As a general rule, a verdict or judgment of acquittal in a criminal trial is a determination that the state has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent.[16] That is why the General Assembly intended in R.C. 2305.02 and 2743.48(A)(4) that a claimant must first affirmatively prove her innocence by a preponderance of the evidence."[17]
 {¶ 34} Our conclusion that a triable issue exists is supported by analyzing this matter from the standpoint of the burden-shifting exercise spelled out in Dresher v. Burt.[18] That is, in moving for summary judgment, the state of Ohio must point to some evidence that affirmatively demonstrates that Henderson has no evidence to support his claim. In response, Henderson must set forth sufficient facts to demonstrate that there is a triable issue.[19]
 {¶ 35} Likewise, Henderson's motion for summary judgment must point to some evidence that affirmatively demonstrates that there is no evidence to deny his claim for wrongful imprisonment. Then, the state of Ohio is required to respond by setting forth sufficient facts to demonstrate that there is a triable issue.
 {¶ 36} Henderson attached multiple documents in support of his motion for summary judgment. Included with the motion was an affidavit of Henderson denying that he raped the alleged victim and that he was aware of the alleged victim's recantation; the two decisions of this court reversing his convictions; the report and testimony from the first trial of Dr. Dodgson, which concluded that the results of his medical exam to determine if the alleged victim had been raped were inconclusive; a report of a private lie detector test that Henderson passed; a report from Trooper Blake, who administered a state-approved lie detector test to Henderson, the results of which were inconclusive; a report from Trooper Blake, who screened the alleged victim prior to administering a lie detector test, and who elicited a recantation from her; the written recantation of the alleged victim dated August 8, 2003; and the statement of the social worker who originally took the alleged victim's statement, together with trial testimony of the alleged victim in the first and second trials which, according to Henderson, demonstrates inconsistencies between her statement to the social worker and her subsequent trial testimony.
 {¶ 37} Without weighing the quantity or the quality of Henderson's evidence offered in support of his motion for summary judgment, we are not able to say that the evidence offered constitutes no evidence of innocence. In fact, some, though not all of the evidence, is probative of innocence, and some is not. Aside from the prior decisions of this court and the evidence regarding lie detector tests, which would be inadmissible evidence at trial, a trier of fact could base a judgment of innocence on the inconclusive results of the doctor's sexual assault examination, the recantation of the alleged victim, and Henderson's assertions that he did not rape the alleged victim. Thus, there is a genuine issue of material fact to be tried.
 {¶ 38} As for the testimony of the alleged victim at the first and second trials, together with her initial statement to the social worker, the state of Ohio predicts that her testimony will be the same at a trial of this cause, but that is a hollow prediction, given the unpredictable nature of testimony in all cases, as well as the unpredictable nature of this alleged victim's testimony, given that she has already recanted one time.
 {¶ 39} In support of its motion for summary judgment, the state of Ohio offered a videotape of the alleged victim at the lie detector session with Trooper Blake, at which she was supposedly bullied to recant her prior testimony and told by the trooper what to write in her statement. In this connection, the state of Ohio also offered the transcript of the alleged victim's testimony at a deposition on December 7, 2005, where she testified that the trooper bullied her about telling the truth, that she was scared to have to testify again, that she recanted only because she did not want to be put through a third trial, and that Henderson really did sexually assault her. Also offered was a transcript of an interview with an investigator from the Trumbull County Prosecutor's Office, taken immediately after the recantation, at which the alleged victim stated that she lied to the trooper due to the mental stress she was experiencing and to avoid the stress of a third trial. Finally, the state of Ohio offered a copy of a federal court decision in which the court for the Northern District of Ohio entered summary judgment in favor of various Trumbull County officials and city of Warren officials whom Henderson had sued under Section 1983, Title 42, U.S. Code.
 {¶ 40} To repeat what has been said above, we do not weigh the quantity or the quality of the evidence offered by the state of Ohio, but we do conclude that there is some evidence putting in doubt the innocence of Henderson as well as some evidence that casts doubt on the credibility of its primary witness. As a matter of law, this matter cannot be resolved by way of summary judgment on behalf of either party.[20]
 {¶ 41} In sum, the finder of fact must determine at a trial on the merits whether Henderson will carry his burden of proof to establish his innocence. The trial court prematurely concluded that he did not meet his burden in the summary judgment exercise, given that the summary judgment exercise is to determine only if there are issues to be tried. Our analysis and discussion demonstrates that there are triable issues, and summary judgment should not have been entered for either party.
 {¶ 42} The judgment is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
COLLEEN MARY O'TOOLE, concurs in judgment only,
DIANE V. GRENDELL, J., dissents with Dissenting Opinion.
[1] State v. Henderson (Sept. 29, 2000), 11th Dist. No. 99-T-0001, 2000 Ohio App. LEXIS 4579.
[2] State v. Henderson, 11th Dist. No. 2001-T-0047, 2002-Ohio-6715.
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[4] Civ.R. 56(C).
[5] Id.
[6] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
[7] Smith v. L.J. Lewis Ents., Inc., d.b.a. Action EmergencyAmbulance (Sept. 28, 2001), 11th Dist. No. 2000-T-0052, 2001 Ohio App. LEXIS 4413, at *13, quoting Civ.R. 56(E).
[8] State v. 1805 Wertz Ave., S.W. Canton, Ohio and $445.00 in U.S.Currency (June 2, 1997), 5th Dist. No. 1996CA00288, 1997 Ohio App. LEXIS 3272, at *7.
[9] Walden v. State (1989), 47 Ohio St.3d 47, 49.
[10] R.C. 2305.02, R.C. 2743.48(A).
[11] Ellis v. State (1992), 64 Ohio St.3d 391, 393.
[12] (Emphasis in original.) State ex rel. Tubbs-Jones v. Suster
(1998), 84 Ohio St.3d 70, 72.
[13] R.C. 2743.48(A)(5).
[14] R.C. 2743.48(A)(5). See, also, State ex rel. Tubbs-Jones v.Suster, 84 Ohio St.3d at 72, Gover v. State (1993), 67 Ohio St.3d 93,95.
[15] R.C. 2901.05(A).
[16] Schrader v. Equitable Life Assur. Soc. (1985), 20 Ohio St.3d 41,46. See, also, Johns v. State (1981), 67 Ohio St.2d 325, 328, Ohio StateBar Assn. v. Weaver (1975), 41 Ohio St.2d 97, 99-100, Friedenthal, Kane Miller, Civil Procedure (1985) 665, Section 14.10.
[17] Walden v. State, 47 Ohio St.3d at 51-52.
[18] Dresher v. Burt, 75 Ohio St.3d at 292-293.
[19] Id.
[20] See Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330.